FILED
MARY L. SWAIN
BUTLER COUNTY
CLERK OF COURTS
03/01/2022 11:06 AM
CV 2022 03 0298

IN THE COURT OF COMMON PLEAS
FOR BUTLER COUNTY, OHIO

| | | |
|---|---|---|
| COLBY BUTLER<br>712 Gordon Smith Blvd., Apt. 7<br>Hamilton, OH 45013<br><br>    Plaintiff,<br><br>  v.<br><br>BWD ACQUISITIONS LLC<br>d/b/a Marcos Pizza<br>1386 Main Street<br>Hamilton, OH 45013<br><br>  **Serve also:**<br>  BWD ACQUISITIONS LLC<br>  d/b/a Marcos Pizza<br>  c/o Brian Drescher<br>  (Statutory Agent)<br>  5651 Wittmer Meadows Dr.<br>  Milford, OH 45150<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO.<br><br>JUDGE:<br><br><br><br><br><br>**COMPLAINT FOR<br>DAMAGES AND<br>INJUNCTIVE RELIEF**<br><br>**JURY DEMAND ENDORSED<br>HEREIN** |

Plaintiff Colby Butler by and through undersigned counsel, as his Complaint against the Defendant, states and avers the following:

## PARTIES

1. Butler is a resident of the city of Hamilton, Butler County, Ohio.

2. Defendant BWD ACQUISITIONS LLC, d/b/a Marcos Pizza, ("BWD") is a domestic-incorporated, for-profit company that conduct business throughout the state of Ohio. The relevant location of the events and omissions of this Complaint took place was 1386 Main Street, Hamilton, Ohio 45013.

EXHIBIT A

3. BWD is, and was at all times hereinafter mentioned, Butler's employer within the meaning of the Family and Medical Leave Act ("FMLA") 29 U.S.C. § 2617, the Americans with Disabilities Act of 1990 ("ADA") 42 U.S.C. § 12101, 42 U.S.C. § 1983, and R.C. § 4112 *et seq*.

## JURISDICTION & VENUE

4. The material events alleged in this Complaint occurred in or around Butler County, Ohio.

5. Therefore, personal jurisdiction is proper over Defendants pursuant to R.C. § 2307.382(A)(1), (2), and/or (3).

6. Venue is proper pursuant to Civ. R. 3(C)(1), (3), and/or (6).

7. This Court is a court of general jurisdiction over the claims presented herein, including all subject matters of this Complaint.

8. Within 300 days of the adverse employment actions described herein, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commissions ("EEOC"), Charge No. 473-2022-00286 ("EEOC Charge").

9. On December 15, 2021, the EEOC issued and mailed a Notice of Right to Sue Letter to Plaintiff regarding the EEOC Charge.

10. Plaintiff received the Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 20000e-5(f)(1), which has been attached hereto as Plaintiff's Exhibit 1.

11. Plaintiff has filed this Complaint on or before the 90-day deadline set forth in the Notice of Right to Sue letter.

12. Plaintiff has properly exhausted all administrative remedies pursuant to 29 C.F.R. §1614.407(b)

## **FACTS**

13. Butler is a former employee of BWD.

14. At all times noted herein, Butler was qualified for his position with BWD.

15. At all times noted herein, Butler could fully perform the essential functions of his job, with or without a reasonable accommodation.

16. Butler worked for BWD as a General Manager from March 2020, until BWD constructively terminated Butler's employment on or about October 21, 2021.

17. While Butler was not originally hired as a General Manager, he was quickly promoted to the position in or around February 2021, after the previous General Manager walked out.

18. Director of Operations Chris Weinberg gave Butler constant praise for his leadership and initiative.

19. However, Butler started noticing that Weinberg would pay new employees more than long-term employees for doing the same job.

20. When long-term employees asked for a raise up to the pay of the newer employees, they were fired and replaced.

21. While Weinberg would pay new employees more, he would also fire them before their 90-day probationary period was over to prevent them from applying for unemployment benefits.

22. This unethical hiring/firing policy created a toxic work environment that cost Butler to lose friends and coworkers and forced Butler to pick up 20-30 hours every week to ensure the store could function properly.

23. The toxic work environment coupled with the extra hours contributed to Butler's deteriorating mental health.

24. In or around Autumn 2021, Butler reached out of Weinberg via text message asking for a raise in order to be properly compensation for all the extra hours he was picking up.

25. Weinberg seemed uncomfortable and disinterested in Butler's question and asked how much money Butler needed in order to avoid this conversation.

26. Butler said that he wanted his annual salary increased by $1,200.

27. Weinberg countered with offering Butler $16/hour. Butler flatly refused this offer.

28. Butler and Weinberg eventually settled on the $1,200 raise, which brought Butler's annual salary up to $65,000.

29. Around the same time that Butler asked for this raise, he had no District Manager to report to and instead reported directly to Weinberg.

30. In or around August 2021, BWD brought in District Manager Toni Stane.

31. In the first few weeks of Stane's employment, she was confused why she was Butler's boss.

32. Stane believed Butler was doing a great job and did not need direct supervision.

33. Stane and Butler had weekly status meetings, but nothing beyond that as Stane firmly believe Butler was doing fine on his own.

34. However, on or around October 13, 2021, Stane came into her weekly meeting with Butler crying.

35. When Butler asked what was wrong, Stane explained that she was upset because her boss, Brian Dreschur, was forcing her to giver Butler a writeup that she didn't understand.

36. Stane said that apparently Butler had been deviating from his schedule and that he was not permitted to do this.

37. Butler through this was bizarre because he had been running the pizzeria in this way throughout the entirety of his employment and was confused why *now* it was a disciplinable offense.

38. Butler did not think this writeup was serious and asked for a meeting with Dreschur to understand what the writeup meant and to explain the situation better.

39. Dreschur responded the next day saying that he would schedule a meeting with Butler, but nothing ever come from it.

40. In the week of October 11-20, 2021, Butler was scheduled to work 45 hours, but in order to keep the store adequately staffed, Butler worked 49 hours.

41. On or around October 20, 2021, Butler was given a second writeup for against deviating from the schedule.

42. Butler was very frustrated with this writeup, because other general managers were deviating from the schedule far worse but were not being similarly written up.

43. On or around October 21, 2020, Butler and Dreschur had a long phone conversation where Butler expressed his concerns about the precedent that the writeups were setting and about how unfair they were.

44. However, it was clear to Butler that Dreschur did not care about the situation and was ignoring Butler the whole time.

45. At this point, Butler was preparing himself to be fired.

46. At the end of the conversation, Butler told Dreschur that if he was going to be written up for these situations, he wanted to be demoted to driver so that he had less hours, less responsibility, and better mental health.

47. This comment to Dreschur constituted adequate notice of Butler's disabilities related to his deteriorating mental health and serious health conditions. It was also a protected complaint of discrimination and a request to engage in the interactive process of finding Butler a reasonable accommodation.

48. Further, this notice also triggered BWD's affirmative duty to provide Butler information regarding FMLA; however, BWD failed to do so.

49. Dreschur explained that he did not have the authority to approve a demotion and said that he would follow up with Butler later.

50. A few hours later, Butler received another call from Dreschur who said that he could not be demoted.

51. Confused, Butler again explained that the General Manager position was negatively affecting his mental health and that he did not want to keep working in that position.

52. Further, Butler explained that he wanted to continue in this job, but he didn't want to continue getting writeups for schedule deviations. This was another protected complaint of disability discrimination and retaliation.

53. Against, Dreschur refused to permit the demotion.

54. Butler asked for more specifics about why he couldn't be demoted, and Dreschur had no response.

55. Frustrated, Butler ended the conversation saying that he would just keep doing the job well as he had before, but that he expected continued retaliation and discrimination against him, eventually resulting in his termination.

56. Soon after this conversation, Butler realized that he could not keep working for a toxic environment that was discriminating against his disability and was interfering with his rights under the FMLA in retaliation for his protected complaints.

57. Butler's employment was then constructively terminated on or about October 21, 2021.

58. BWD forced Butler to resign.

59. Any reasonable person in Butler's situation would feel similarly forced to resign.

60. Butler's resignation was therefore an unlawful, constructive termination.

61. As a result of the above, Butler has suffered and will continue to suffer damages.

## COUNT I: DISABILITY DISCRIMINATION IN VIOLATION OF R.C. § 4112 *et seq.*

62. Butler restates each and every paragraph of this Complaint as if it were restated herein.

63. As described infra, Butler's position at BWD was contributing to his deteriorating mental health; therefore, Butler is in a protected class for his disabilities.

64. Alternatively, BWD perceived Butler as being disabled.

65. During his employment with BWD, Butler was subjected to offensive and harassing conduct based on his actual and/or perceived disability from his supervisors.

66. Defendant knew or should have know of the offensive, harassing conduct against Butler.

67. Defendant condoned, tolerated, and ratified this offensive, harassing conduct.

68. This offensive, harassing conduct was severe and/or pervasive.

69. This offensive, harassing conduct was offensive to Butler.

70. This offensive, harassing conduct would also be offensive to any reasonable person.

71. This offensive, harassing conduct interfered with Butler's ability to perform his job duties.

72. This offensive, harassing conduct was based on Butler's actual and/or perceived disability.

73. This offensive, harassing conduct was so severe and pervasive that it materially altered the conditions of Butler's employment.

74. Defendant also materially changed Butler's employment by forcing him to accept disparately assigned writeups and preventing him from taking a voluntary demotion.

75. These writeups and prevention were adverse employment actions against Butler.

76. Any reasonable person in Butler's place would also have no choice but to resign due to the conduct.

77. Defendant treated Butler differently than other similarly-situated employees based on his actual and/or perceived disabling condition.

78. Butler, with no other reasonable choice, was then forced to resign his employment.

79. On or about October 21, 2021, Defendant forced Butler to resign without just cause.

80. Butler's resignation was a constructive termination, an adverse employment action.

81. Defendant constructively terminated Butler's employment.

82. Defendant forced Butler to resign based on his actual and/or perceived disabling condition.

83. R.C. § 4112 *et seq.* provides that it is an unlawful discriminatory practice for an employer to discriminate against an employee on the basis of the employee's disability.

84. Defendant violated R.C. § 4112 *et seq.*, when it constructively discharged Butler based on his actual and/or perceived disabling condition.

85. Defendant violated R.C. § 4112 *et seq.*, by discriminating against Butler based on his actual and/or perceived disabling condition.

86. Butler suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to R.C. § 4112 *et seq.*

87. As a direct and proximate result of Defendant's conduct, Butler suffered and will continue to suffer damages.

## COUNT II: DISABILITY DISCRIMINATION IN VIOLATION OF THE ADA

88. Butler restates each and every paragraph of this Complaint as if it were restated herein.

89. As described *infra*, Butler's position at BWD was contributing to his deteriorating mental health; therefore, Butler is in a protected class for his disabilities.

90. Alternatively, BWD perceived Butler as being disabled.

91. During his employment with BWD, Butler was subjected to offensive and harassing conduct based on his actual and/or perceived disability from his supervisors.

92. Defendant knew or should have known of the offensive, harassing conduct against Butler.

93. Defendant condoned, tolerated, and ratified this offensive, harassing conduct.

94. This offensive, harassing conduct was severe and/or pervasive.

95. This offensive, harassing conduct was offensive to Butler.

96. This offensive, harassing conduct would also be offensive to any reasonable person.

97. This offensive, harassing conduct interfered with Butler's ability to perform his job duties.

98. This offensive, harassing conduct was based on Butler's actual and/or perceived disability.

99. This offensive, harassing conduct was so severe and pervasive that it materially altered the conditions of Butler's employment.

100. Defendant also materially changed Butler's employment by forcing him to accept disparately assigned writeups and preventing him from taking a voluntary demotion.

101. These writeups and prevention were adverse employment actions against Butler.

9

102. Any reasonable person in Butler's place would also have no choice but to resign due to the conduct.

103. Defendant treated Butler differently than other similarly-situated employees based on his actual and/or perceived disabling condition.

104. Butler, with no other reasonable choice, was then forced to resign his employment on or around October 21, 2021.

105. Butler's resignation was a constructive termination, an adverse employment action.

106. Defendant constructively terminated Butler's employment.

107. Defendant forced Butler to resign based on his actual and/or perceived disabling condition.

108. The ADA provides that it is an unlawful discriminatory practice for an employer to discriminate against an employee on the basis of the employee's disability.

109. Defendant violated the ADA when it constructively discharged Butler based on his actual and/or perceived disabling condition.

110. Defendant violated the ADA by discriminating against Butler based on his actual and/or perceived disabling condition.

111. Butler suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to the ADA.

112. As a direct and proximate result of Defendant's conduct, Butler suffered and will continue to suffer damages.

**COUNT III: FAILURE TO ACCOMMODATE**

113. Butler restates each and every prior paragraph of this Complaint as if it were fully restated herein.

114. Butler informed Defendant of his disabling condition.

115. Butler requested accommodations from Defendant to assist with his disabilities, including a demotion to a Driver position to allow him to deviate from his schedule without getting written up.

116. Butler's requested accommodation was reasonable.

117. This accommodation was available to Defendant and would have been effective without posing undue hardship on Defendant.

118. Defendant failed to engage in the interactive process of determining whether Butler needed an accommodation.

119. Defendant failed to provide an accommodation to Butler when Dreschur refused to permit his requested demotion.

120. Defendant violated R.C. § 4112 *et seq*. and the ADA, by failing to provide Butler with a reasonable accommodation.

121. Defendant's failure to provide Butler with a reasonable accommodation was offensive, harassing conduct.

122. Defendant knew or should have known of the offensive, harassing conduct against Butler.

123. Defendant condoned, tolerated, and ratified this offensive, harassing conduct.

124. This offensive, harassing conduct was severe and/or pervasive.

125. This offensive, harassing conduct was offensive to Butler.

126. This offensive, harassing conduct would also be offensive to any reasonable person.

127. This offensive, harassing conduct interfered with Butler's ability to perform his job duties.

128. This offensive, harassing conduct was based on Butler's requested accommodation.

129. This offensive, harassing conduct was so severe and pervasive that it materially altered the conditions of Butler's employment.

130. Defendant materially changed Butler's employment by forcing him to continue working in a position that was negatively impacting his mental health: and adverse employment action against him.

131. Any reasonable person in Butler's place would also have no choice but to resign due to the conduct.

132. Defendant treated Butler differently than other similarly-situated employees based on his request for a reasonable accommodation.

133. Butler, with no other reasonable choice, was then forced to resign his employment on or about October 21, 2021.

134. Butler's resignation was a constructive termination, an adverse employment action.

135. Defendant constructively terminated Butler's employment.

136. Defendant forced Butler to resign based on his request for a reasonable accommodation.

137. R.C. § 4112 *et seq.* and the ADA, provides that it is an unlawful discriminatory practice for an employer to discriminate against an employee on the basis of the employee's disability.

138. Defendant violated R.C. § 4112 *et seq.* and the ADA, when it constructively discharged Butler based on his request for a reasonable accommodation.

139. Butler suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages.

140. As a direct and proximate result of Defendant's conduct, Butler suffered and will continue to suffer damages.

**COUNT IV: UNLAWFUL INTERFERENCE WITH FMLA RIGHTS**

141. Butler restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

142. Pursuant to 29 U.SC. § 2601 *et seq.*, covered employers are required to provide employees job-protected unpaid leave for qualified medical and family situations.

143. Defendant is a covered employer under the FMLA

144. During his employment, Butler qualified for FMLA leave.

145. During his employment, Butler told Defendant, by and through Dreschur, that his job responsibilities and writeups were causing his mental health to deteriorate.

146. Butler's comment placed Defendant on notice of Butler's need and qualification for FMLA leave.

147. Defendant never informed Butler of his rights under the FMLA, despite its affirmative duty to do so.

148. Defendant unlawfully interfered with Butler's exercise of his rights under the FMLA in violation of Section 105 of the FMLA and Section 825.220 of the FMLA regulations.

149. As a direct and proximate result of Defendant's conduct, Butler is entitled to all damages provided in 29 U.S.C. § 2617, including liquidated damages, costs and reasonable attorney's fees.

## COUNT V: RETALIATION

150. Butler restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

151. During his employment, Butler received constant praise from Weinberg for his leadership and initiative in the General Manager position.

152. It was only after Butler asked for a raise that Defendant began retaliating against him.

153. In or around Autumn 2021, Butler asked for a raise to appropriately compensate him for the extra hours he was working.

154. Subsequent to his request for a raise, Butler started receiving writeups for "deviating from the schedule," and working extra hours.

155. The writeups got so bad that Butler's mental health started deteriorating, and he requested a reasonable accommodation, including but not limited to, a voluntary demotion and specifically cited his mental health as the reason for his request.

156. Butler also made protected complaints of discrimination to Defendant.

157. Defendant denied Butler this accommodation and refused to take action on his protected complaints, forcing Butler to resign his employment: an adverse employment action.

158. Defendants' actions were retaliatory in nature based on Butler's opposition to the unlawful writeups and discrimination.

159. Pursuant to R.C. § 4112 et seq., it is an unlawful discriminatory practice to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice.

160. As a direct and proximate result of Defendants' retaliation against and constructive termination of Butler, Butler suffered and will continue to suffer damages.

## DEMAND FOR RELIEF

WHEREFORE, Butler demands from Defendant the following:

a) Issue a permanent injunction:

   i. Requiring Defendant to abolish discrimination, harassment, and retaliation;

   ii. Requiring allocation of significant funding and trained staff to implement all changes within two years;

   iii. Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal responsibility to promptly investigate complaints and/or take effective action to stop and deter prohibited personnel practices against employees;

   iv. Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and

      v.      Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

b) Issue an order requiring Defendant to expunge Butler's personnel file of all negative documentation;

c) An award against each Defendant for compensatory and monetary damages to compensate Butler for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

d) An award of punitive damages against each Defendant in an amount in excess of $25,000;

e) An award of reasonable attorneys' fees and non-taxable costs for Hudson's claims as allowable under law;

f) An award of the taxable costs of this action; and

g) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

   /s/ Evan R. McFarland
Evan R. McFarland (0096953)
Matthew G. Bruce (0083769)
Trial Attorney
Brianna R. Carden (0097961)

16

                    **THE SPITZ LAW FIRM, LLC**
                    Spectrum Office Tower
                    11260 Chester Road, Suite 825
                    Cincinnati, OH 45246
                    Phone: (216) 291-0244 x173
                    Fax:    (216) 291-5744
                    Email: Matthew.Bruce@SpitzLawFirm.com
                    Email: Evan.McFarland@SpitzLawFirm.com
                    Email: Brianna.Carden@SpitzLawFirm.com

                    *Attorneys for Plaintiff Colby Butler*

17

**JURY DEMAND**

Plaintiff Colby Butler demands a trial by jury by the maximum number of jurors permitted.

                                                  /s/ Evan R. McFarland
                                                  Evan R. McFarland (0096953)